## JOHN W. HIXON *et al.* v. THOMAS B. CUPP.

1. PRISONERS—*County Jail—Duty of Sheriff.* It is the duty of the sheriff to safely keep and protect the prisoners in his charge from unlawful injury, and if unlawful assau ts are made upon such prisoners in the county jail by others who are confined therein, the sheriff will be responsible in an action for damages to the prisoner suffering the injury, if the sheriff and his deputies or jailer in his employment or deputed by him, are aware of the contemplated assault and do not use every reasonable means to prevent it. Such neglect on the part of either the sheriff, deputies or jailer, is a failure to "faithfully perform" the duty of sheriff.

2. BOND OF SHERIFF—*Liability of Sureties.* The liability of the sureties on the sheriff's bond in such a case is a joint one with the sheriff, and they may be sued together with the sheriff, directly upon his bond, for such non-feasance or misfeasance in office, and they will be liable together with him thereon.

3. EXEMPLARY DAMAGES—*Sureties not Liable.* The sureties are, however, not liable for exemplary damages. The measure of damages as against the sureties is, in the absence of any provision of the statute, just compensation for actual injury.

## *Error from the District Court of Logan County.*

### STATEMENT OF FACTS.

This was an action brought by the defendant in error against Hixon, and his sureties on his official bond, as sheriff of Logan county, for trespass against the person of the defendant in error, committed under the following circumstances: Cupp was arrested on February 13, 1892, upon a warrant duly issued by a justice of the peace of Logan county, and his bail having been fixed at $250, he was unable immediately to procure it and was, by Hixon, under and by virtue of the warrant of arrest, confined in the common jail of Logan county, and while there was tried upon a moot trial by the prisoners confined therein in a pretended mock or "kangaroo" court,

and a pretended fine was assessed against him of fifty cents, by the other prisoners, and upon his refusal to pay the fine he was seized and overpowered and subjected to a penalty of fifty lashes, and other infamous punishment. It appeared in evidence that it had been the custom of the prisoners in the jail to impose such pretended fines and punishments upon persons placed in the jail, and that Hixon knew of and took no steps to put a stop to the custom. The bond of Hixon as sheriff, provided, in pursuance of the statute, that he should "faithfully perform and execute the office of sheriff of the county of Logan, during his continuance in office, without fraud, deceit or oppression," etc.

The defendants demurred to the complaint: (1) For a misjoinder of parties defendant, and (2) for a misjoinder of the different causes of action, and (3) that the complaint did not state facts sufficient to constitute a cause of action against the defendants, or either of them. The demurrer was overruled, whereupon the defendants answered by a general denial. The cause was tried to a jury and evidence adduced in support of the charges made in the petition.

The court, in addition to the instructions usually given in civil actions, instructed the jury that the sheriff and the sureties were liable in damages if any injury occured to any person in the custody of under-sheriff or jailer appointed by the sheriff, which injury occurred through the omission or negligence of such under-sheriff or jailor, to the same extent as the sheriff and the sureties on his official bond, as if such injury had occurred by reason of the negligence or omission of the sheriff, and that, in order to find the defendants liable, they would have to find that the defendant, Hixon, knew that it was

the custom of the prisoners confined in the jail under his charge to assault and beat persons brought to such jail, and failed use such means as were at his command to prevent such acts, or that the jailer in charge of the jail and prisoners at the time of the alleged trespasses, Bryant, was incompetent to manage the jail, or failed to use the means at his command to prevent the assault upon the plaintiff, and that the defendants were not liable if they found that Bryant was a man competent for the position of jailer, and that he used all the care and appliances at his command to prevent the wrong and assault upon the defendant, which was complained of.

The court instructed the jury that while the law made it incumbent upon the sheriff and the jailer to protect from assault, the prisoner while in jail, yet, if the sheriff and jailor used ordinary care and vigilance, then the defendants were not liable, and in order to determine whether the sheriff and jailer used the proper care and vigilance, the jury was directed to consider the conditions, under which the sheriff and jailor were acting, the character of the jail, the number of prisoners incarcerated, the fact that the sheriff was allowed but one jailer, the means, if any, which were taken to prevent the assaults of the character complained of, and all the facts and circumstances generally, shown in evidence.

The jury was instructed that if they found that the sheriff knew that such assaults were liable to be made and did not use the means within his power to put a stop to the custom of such pretended moot courts and punishments, that the plaintiff was, in that event, entitled to recover against the defendants, not only for the actual damages sustained, by reason of the injuries, but also exemplary damages.

Special questions were submitted to the jury on behalf of the defendants, and answered, to the effect that the defendant, Hixon, was not present and had no knowledge of the incarceration of the plaintiff, Cupp, at the time the assault was committed, and (2) that the jailer, Bryant, was present at the time of the assault, and (3) that the sheriff, Hixon, had not instructed his subordinates at all times to use their utmost endeavors to prevent the prisoners in the jail from holding "kangaroo" courts, and (5) to the special question, "How much do you find as actual and compensatory damages?" the answer was made by the jury, "One hundred and fifty dollars," and "How much do you give as exemplary damages?" the answer was given, "Fifty dollars." The jury at the same time returned a verdict in behalf of plaintiff for the sum of two hundred dollars. A motion for a new trial was overruled.

*H. S. Cunningham* and *G. S. Cunningham*, for plaintiff in error.

*Cotteral & Hornor*, for defendant in error.

The opinion of the court was delivered by

McATEE, J.: This cause is brought here upon numerous assignments of error, which are argued in the briefs chiefly upon two propositions, to-wit: (1) That the sheriff was not liable on his official bond for the acts charged, and (2) that if liable on the bond, an action would not lie against the sureties until a judgment had first been obtained against the sheriff in an independent action.

The sections of the statute under which the action was brought are found on p. 392, of the Statutes of Oklahoma, 1890. They provide, in § 1749, that:

" * * The sheriff and his sureties shall be responsible, on his official bond, for the acts and omissions of his under-sheriff, and also for the acts and omissions of the persons deputed to do particular acts."

And in § 1751, that:

"The sheriff shall have the charge and custody of the jail of his county and all the prisoners in the same, and shall keep such jail himself, or by his deputy, or jailer, for whose acts, he and his sureties shall be liable."

The plaintiff was in the county jail at the time of the acts complained of under a warrant duly issued from a court authorized to direct the sheriff to arrest and keep the plaintiff in his custody. No question exists as to the validity of the commitment, or that the confinement of the plaintiff was done by the sheriff or his deputy, in the due and lawful exercise of his authority as sheriff. So far, then, the sheriff discharged his duty. He was doing and had done one of the things which the law made it his duty, as sheriff, to "faithfully" perform. Had he discharged his whole duty, when the plaintiff was arrested, and held under process of law duly issued, in his charge, and thus placed in the county jail, and a large number of prisoners being also confined there, charged with the violation of law, and when he had turned the key upon the plaintiff, had he then "faithfully" discharged the whole duty imposed upon him, and did he then "faithfully" keep the jail while permitting such an assault to be made as is charged in the petition? Evidence was adduced to the jury to show that the sheriff knew that it was the custom of the prisoners confined in the jail under his charge to assault and beat prisoners brought to such jail, after pretended or mock trials, and that he failed to use such means as were at his command to prevent such acts, and the jury were instructed by the

court that they could not find the defendant sheriff liable unless he had so known of the custom referred to, and had failed to use such means, or that he had employed an incompetent jailer to take care of the prisoners there confined, including the plaintiff.

It is further provided in § 1753, of the Statutes of Oklahoma, 1890, that:

"It shall be the duty of the sheriff, under sheriffs, and deputies, to keep and preserve the peace of their respective counties, and to quiet and suppress all affrays;  *  * and in apprehending or securing any person for a felony or breach of the peace, they may call to their aid such person or persons of the county as they may deem necessary."

It was, then, under the statute, the duty of the sheriff to preserve the peace and to quiet and suppress all affrays, and he had the power in such suppression to call to his aid any person or persons of his county as he might deem necessary. The county jail was peculiarly and especially under his province, and the persons confined therein were wholly dependent upon him and his subordinates for protection from violence. The assault made upon the defendant in error was one of an outrageous and unprovoked character; it was without mitigation or excuse; it was made, as the jury found, when the jailer, Bryant, "was present at the time of the assault," and if the sheriff could, in such a case, be exempt from liability, it would be upon an interpretation of the law which, while making it his duty to preserve the peace throughout the county, would imply an exception in favor of the county jail which is under his immediate surveillance and protection, and in which the prisoners was shut up, helpless, in the companionship of other prisoners who were known to be in the habit of making assaults of a similar character.

It was the duty of the sheriff and his deputies to keep the peace. In the presence of a statute which makes it the duty of the sheriff to keep the peace and suppress affrays througout the county of Logan, was the sheriff exempt from that duty because the plaintiff was incarcerated in the county jail, immediately under his personal care, and without any means of self protection? The situation of the plaintiff was one of entire dependence upon the sheriff and his deputies. The duty of protection was one of peculiar force, imposing a stronger obligation than that which the statute makes it the duty of the sheriff to discharge through the limits of the county generally.

When the court instructed the jury that if the sheriff and jailer used ordinary care and vigilance, then the defendants were not liable, it was surely expressing the law in terms of moderation and interpreting the law most favorably to the sheriff. It was the duty of the sheriff to use, at least, that degree of care in the protection of the plaintiff. The situation of the plaintiff required at least "ordinary care and vigilance," and if the sheriff and his deputies and jailer omitted these, then they omitted to "faithfully" discharge the duty toward the plaintiff, to that extent imposed by the statute and he is then expressly declared to be "responsible on his official bond."

In the case of *Asher v. Cabell*, 50 Fed. Rep. 818, which was an action against a United States marshal and his bondsmen for permitting a prisoner to be killed by a mob, the court said, that:

"The defendant, as United States marshal, certainly owed a duty in the premises to Marlo ————, that of safe keeping and protection from unlawful injury. The defendant's oath of office, his bond, and the necessary implications of the law, all point to such duty as imposed

upon him, 'whenever a common law, a statute, a munici-
pal by-law, or any other law, imposes on one a duty, if
of a sort affecting the public, within the principles of the
criminal law, a breach of it is indictable, and a civil
action will lie in favor of any person who has suffered
specially therefrom.'(Bishop's Non-Contract Law, § 132).

. " 'Commonly, where the law has cast a duty upon one
to another, simply neglect to discharge it, whereby the
other has suffered injury, is actionable.' (*Id.* § 526).
'When the injury proceeds from two causes operating
together, the party putting in motion one of them is
liable the same as though it was the sole cause. This is
one form of a universal principle of law, that he who con-
tributes to a wrong, either civil or criminal, is answerable
as a doer.' (*Id.* § 39). That a United States marshal
may take prisoners into his custody, and permit them to
be disarmed and shackled, and then negligently and
knowingly deliver them over to incompetent deputies,
and the known hostility of mobs, without liability for his
neglect of duty, is a proposition which we think cannot
be sanctioned."

While it is sought to sever the liability of the sureties
from that of the sheriff there can be no contention and
no reasonable ground for separating the liability of one
from that of the other, because the bond is given for the
"faithful performance and execution of the office of
sheriff," and if, acting in the discharge of his duty, the
sheriff fails to "faithfully perform" that duty, then the
sureties are equally liable with himself, and if, while
acting *virtute officii*, a sheriff, or his deputy, omits to do
the thing which, in the faithful discharge of his duty he
ought to have done, it is a misfeasance, and a case of
trespass and the sheriff is liable on his bond. (*People
v. Schuyler*, 4 N. Y. Rep. 179; Machem on Public
Officers, §§ 664, 667, 672, 674, 682, 798).

And it was said in *South v. State of Maryland*, 18

How. 396, that: "To entitle a citizen to sue on the bond for his own use, he must show such a default as would entitle him to recover against the sheriff in an action on the case." Thus holding that if the plaintiff had a right of recovery in a case like the present, that he could sue immediately on the bond. "In his ministerial capacity" the sheriff "is bound to execute all processes issuing from the courts of justice. He is keeper of the county jail, and answerable for the safe keeping of prisoners." And that: "Where he acts ministerially he is liable for acts of misfeasance and nonfeasance to the party who is injured by them."

Upon the second proposition that, if liable thereon an action would not lie against the sureties until a judgment had first been obtained against the sheriff in an independent action, we do not think that this contention could be sustained.

The statute heretofore cited appears sufficiently plain. There appears to be no reason why, in the face of the bond which is jointly conditioned by the sheriff and his sureties for the faithful performance and execution of his office as sheriff, when the plaintiff comes into court alleging that the sheriff has not faithfully performed and executed his duty as sheriff, there need be no separation and prior action as against the sheriff.

Indeed, it is to the interest of the sureties that they should have the privilege and advantage of defending in a joint action with the sheriff, instead of being put upon their defense in an action upon a judgment against the sheriff, in which they have not had the opportunity of defending.

No requirement of the kind is made in the statute, nor does there appear to have been any practice of the kind

at the common law, nor any foundation in reason for such a separation and prior action against the sheriff, himself.

It was declared in *Governor v. White*, 24 Amer. Dec· 763, by the supreme court of Alabama, that:

"Sureties upon an official bond are proper parties to a suit brought upon a breach of the condition of the bond, though neither the fact nor amount of their principal and liability had been established by previous suit."

No authorities are cited against this view. Authorities in support of it are *State v. Leeds*, 31 N. J. Law, 185; *Hoye v. Raymond*, 25 Kan. 665. And it is declared in Murfree's Official Bonds, §§ 490, 491 and 492, that:

"It is not the general rule that a judgment against the sheriff individually is an essential preliminary to an action on his official bond. * * There being no necessity for more than one suit to fix the liability of the defendants, only one should be instituted."

We do not think, however, that the sureties can be held liable for exemplary damages. The measure of damages in all cases against the sureties of an officer, in the absence of any statutory rule, is just compensation for actual injury. (*Brobst v. Skillen*, 16 Ohio St. 382; *Zeigler v. Commonwealth*, 12 Pa. St. 227; *Bevans v. Ramsay*, 15 How. U. S. 179; *Bennett v. Vingard*, 34 Mo. 216; *Lowell v. Parker*, 10 Met. 309; *Griffin v. Undervood*, 16 Ohio St. 389).

The amount of damages assessed by the jury as exemplary damages was, therefore, without authority and should have been disallowed by the court, and this order will accordingly be made.

In other respects the judgment will be affirmed.

Dale, C. J., having presided in the court below, and

Keaton, J., having been of counsel, not sitting; all the other Justices concurring.