WILHELMINA GUNTHER, as Administratrix of the Estate of CHARLES PLAG, Deceased, Appellant, *v.* ADDISON JOHNSON, as Sheriff of the County of Westchester, State of New York, Respondent.

*Negligence — prisoner in a county jail stabbed with a pocket knife by another prisoner — liability of the sheriff.*

In an action to recover damages because of the death of the plaintiff's intestate resulting from the alleged negligence of the defendant, it appeared that the plaintiff's intestate, while confined in a county jail to await the action of the grand jury under a charge of grand larceny, and while in the custody of the defendant as sheriff of the county, had an altercation with one Williams, who had been committed to the jail as a vagrant, and that on the following morning when the prisoners were allowed the liberty of the corridor of the jail, no keeper being present, the quarrel was resumed, and the plaintiff's intestate struck Williams, who, ran after and stabbed him with a pocket knife.which Williams owned and used in shaving.

*Held,* that, in the absence of evidence that the sheriff knew of any trouble in the jail, negligence could not be predicated upon his failure to anticipate the attack of the plaintiff's intestate upon Williams or the subsequent felonious assault by Williams.

*Semble,* that the blow inflicted by the plaintiff's intestate upon Williams, and not the possession of the knife or the absence of a keeper or the permitting of two convicts to be in the same room, was the *causa causans* of the stabbing, and that the plaintiff's intestate was guilty of contributory negligence.

APPEAL by the plaintiff, Wilhelmina Gunther, as administratrix, etc., of Charles Plag, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 13th day of January, 1898, upon the dismissal of the complaint by direction of the court after a trial at the Westchester Trial Term.

*William C. Beecher* [*Robert Goeller* with him on the brief], for the appellant.

*Henry T. Dykman,* for the respondent.

GOODRICH, P. J.:

The questions involved in this appeal have the benefit of novelty. On January 9, 1897, the plaintiff's intestate and son, Charles Plag, was committed to the county jail of Westchester county, to await

the action of the grand jury on a charge of grand larceny, and while there was in the custody of the defendant as sheriff of the county. There was also in the jail a colored man, Henry Williams, who had been committed to the jail for thirty days as a vagrant. Williams occupied a cell in the ground tier, and Plag in an upper tier. The tiers of cells face a quadrangle or corridor to which the prisoners have access at stated times. During the evening of January twenty-third, Plag and Williams, while each was in his cell, had an acrimonious verbal quarrel in which Williams called Plag by opprobious epithets. The talking was loud and some of it profane, and continued about a quarter of an hour. Plag called back to Williams: "I don't want you to be hollering at me, I will show you in the morning." The next morning, about seven o'clock, Williams was released from his cell and remained in the lower part of the jail till about half-past ten o'clock, when Plag came down to the lower floor and, going to Williams, some further altercation ensued. Plag struck Williams in the face with his fist, and then went to the toilet to wash. Williams ran after him with an open knife, chased him around the quadrangle and finally stabbed him two or three times, causing his death.

. It appears that at the time of the accident there was a large number of persons in the corridor, and that no keeper, turnkey or warden was present, except a man named Ferris, who had been committed as a vagrant and had been appointed by the sheriff to some duty, the precise nature of which does not appear. The instrument with which Williams stabbed Plag was a pocket knife which the former owned and used in shaving, and which was sometimes borrowed by other prisoners for the same purpose, there being no barber in the jail.

. The plaintiff sued the defendant, as sheriff, to recover damages. At the close of the plaintiff's case the court dismissed the complaint, and from the judgment entered thereon the plaintiff appeals.

Section 121 of the Code of Civil Procedure provides that "the sheriff of each county shall have the custody of the jail or jails of his county, and of the prisoners in the same."

. 1 Revised Statutes (9th ed.), section 92, page 623, reads in part as follows: "*Custody and control of prisoners.* — Each sheriff shall receive and safely keep in the county jails of his county, every per-

son lawfully committed to his custody for safe keeping, examination or trial, * * * or committed or sentenced to imprisonment therein. * * * He shall not, without lawful authority, let any such person out of jail. * * * Persons detained for trial or examination upon a criminal charge shall not be put or kept in the same room with convicts under sentence. * * * All persons confined in a county jail shall, as far as practicable, be kept separate from each other. * * * Convicts under sentence shall not be allowed to converse with any other person, except in the presence of a keeper."

Section 183 (Id. p. 643): " *Custody of jails.* — Each sheriff shall have the custody of the jails of his county and the prisoners therein, and such jails shall be kept by him, or by keepers appointed by him, for whose acts he shall be responsible."

The appellant's counsel contends that the words " receive and safely keep " in section 92 imposed upon the sheriff something more than the duty of safely detaining Plag to await the action of the law, and that the sheriff was thereby bound to afford him protection against the violence of other prisoners. In the view which we take of the case it is not necessary to decide that question. It may well be that where a prisoner is committed to the custody of the sheriff, a corelative duty is imposed upon the latter to exercise reasonable care and diligence to protect his prisoner from dangers known to, or which might reasonably be apprehended by him, but this responsibility does not necessarily arise from the statute. The responsibility of the defendant in this action, if any, is predicated upon his neg-. ligence. The complaint alleges that this negligence consisted in failing to cause a search of Williams to be made ; in permitting him to have a knife in his possession ; in not causing a sufficient guard and watch over him, and in permitting him, without being properly watched, to go into the corridor where the deceased was.

This being an action for damages resulting from negligence, the decedent must be shown to have been free from contributory neg-ligence. It was not the failure of the sheriff to search Williams, or to have a guard in the jail, or the access of Plag and Williams to each other, that was the cause of the assault. Under ordinary circumstances, Plag, like the other prisoners, would not have been assaulted, and there is no evidence of any previous disturbances in

the jail. The real cause of the assault was the previous attack of Plag upon Williams, an assault which the defendant was not bound to expect or provide against. If the sheriff had had notice of the quarrel, or might reasonably have expected that Plag would attack Williams, it would have been his duty to prevent it. It is apparent that the stabbing was directly and immediately caused by Plag striking Williams. That, and neither the possession of the knife, nor the absence of a keeper, nor the permitting the two convicts to be in the same room, was the *causa causans* of the stabbing; and the sheriff cannot be charged with negligence in failing to anticipate such an occurrence.

It will be observed that the question involved is not whether Williams was justified in his attack upon Plag, nor whether he would have been responsible to the plaintiff in an action at law for damages. The principle upon which we decide this appeal is that the sheriff was not bound to anticipate such an affray between the parties. Williams was confined as a vagrant and not for any crime indicating violence of disposition, or qualities which rendered his presence dangerous to other prisoners. Nor can the inference be fairly drawn from the evidence that the stabbing would have occurred except for Plag's assault upon Williams. On the contrary, we think an opposite presumption arises from the evidence.

The learned counsel for the appellant, while conceding that he has been unable to find any precedent in this State for the maintenance of this action, cites in favor of his contention *Hixon* v. *Cupp* (5 Okla. 545). That case is easily distinguishable from the present one. The plaintiff had been committed to the county jail, and while there was tried by the other prisoners in a mock or "kangaroo" court and sentenced to pay a fine of fifty cents, and upon his refusal to pay the fine was seized, overpowered and subjected to a penalty of fifty lashes. The action was brought against the sheriff for damages. It appeared in evidence that it had been the custom of the prisoners to impose such pretended fine and punishment; that the sheriff was aware of it and took no steps to put a stop to the custom, and that the jailer appointed by the sheriff was present at the time of the assault. The court charged that the sheriff was liable in damages if any injury occurred to any person in the custody of the jailer appointed by the sheriff, if the injury occurred

through the omission or negligence of such jailer, just the same as if the injury had occurred by reason of the omission or negligence of the sheriff; and that in order to find the sheriff liable they would have to find that he knew of the custom of the prisoners to assault and beat persons in custody and failed to use such means as were at his command to prevent such acts; or that the jailer was incompetent to manage the jail or failed to use the means at his command to prevent the assault upon the plaintiff; and that the sheriff was not liable if the jailer was a competent man and used all the care and appliances at his command to prevent the assault; that while the law made it incumbent on the sheriff and jailer to protect the prisoner from assault while in jail, yet if the sheriff and jailer used ordinary care and diligence the sheriff was not liable; and that, in determining this question, the jury were to consider the conditions under which the sheriff and jailer were acting, the character of the jail, the number of prisoners and the fact that the sheriff was allowed but one jailer, and the means, if any, which were taken to prevent such assault; that if the sheriff knew that such assaults were liable to be made and did not use the means within his power to put a stop to such proceedings, the plaintiff was entitled to recover his actual damages. The jury found a verdict for the plaintiff and on the appeal the judgment as to actual damages was affirmed. The court, however, based its opinion on the ground that there was a statute making it the duty of the sheriff to keep the peace in his county and that this included the jail; that the plaintiff was entirely dependent for protection upon the sheriff and jailer; that the statute imposed upon the sheriff a stronger obligation to a prisoner in jail than was imposed upon him throughout the limits of the county; that it was the duty of the sheriff and jailer to use at least ordinary diligence in the care and protection of the plaintiff, and if they omitted it the sheriff was liable for the assault. All the justices concurred in the opinion.

In *Asher* v. *Cabell* (2 U. S. App. 158) the United States Circuit Court of Appeals held that a United States marshal owed to a prisoner in his charge the duty of safe keeping and protection from unlawful injury. The case came up on a petition in which it was alleged that the petitioner was in the custody of the marshal, as a prisoner; that the marshal knew that there was danger attending his

life and safe keeping from the violence of a lawless and dangerous mob which had previously made an assault upon the jail in which the prisoner was confined, intending to do violence to him, and was still conspiring to do such violence; but that the marshal neglected to take any measures for his protection and intrusted his custody to his deputies or guards, whom he knew to be unfit and incompetent persons; that they were in collusion with the mob, and that while the prisoner under their charge was being removed from one jail to another he was set upon by the mob and killed.   The opinion referred to section 788 of the United States Revised Statutes, which imposes upon marshals in each State the same duty in executing the laws of the United States as the sheriffs and their deputies in such States may have by law in executing the laws thereof.   Reference also was made to section 5538, which reads as follows: "The marshal shall make such other provision as he may deem expedient and necessary for the safe keeping of the prisoners arrested or committed under the authority of the United States, until permanent provision for that purpose is made by law."   The court held (p. 173): "It seems clear that the defendant, Cabell, as late United States marshal, while undoubtedly sued on account of the faults, negligence and wrongful acts of his deputies and agents, is also sued for his own defaults and negligence.   The question remaining is whether the defaults and negligence charged directly against the defendant are sufficient in connection with the other facts alleged to make him responsible for the unlawful killing of Alfred Aaron Marlow.   The defendant, as United States marshal, certainly owed a duty in the premises to the said Marlow — that of safe keeping and protection from unlawful injury.   The defendant's oath of office, his bond and the necessary implications of the law, all point to such duty as imposed upon him."

Both these cases are based upon a willful and known neglect of a duty imposed upon the official.   In the *Hixon* case it was the failure of the sheriff to prevent a violent custom which prevailed among prisoners; in the *Asher* case it was the intrusting a prisoner to guards and deputies known by the marshal to be in collusion with a violent and lawless element.

In the present case the neglect alleged is of an entirely different character.   The difficulty is that there is no evidence that the

sheriff knew of any trouble in the jail, or was bound to anticipate the attack of Plag upon Williams, or the subsequent felonious assault of Williams upon Plag. He cannot be charged with negligence in failing to prevent what he could not reasonably anticipate, and consequently it cannot be affirmed that the sheriff failed in his duty, or that he willfully did something which resulted in the injury to the plaintiff's intestate.

The judgment must be affirmed.

All concurred, except WOODWARD, J., absent.

Judgment affirmed, with costs.