[No. 11858.   Department One.   August 11, 1914.]

ALONZO RIGGS *et al.*, *Appellants*, v. B. H. GERMAN *et al.*, *Respondents.*[1]

SHERIFFS AND CONSTABLES—PROTECTION OF PRISONERS—NEGLIGENCE —EVIDENCE—SUFFICIENCY. The evidence is insufficient to show that a sheriff was negligent in failing to prevent an assault on a prisoner by the inmates of a jail, where it appears that, soon after his commitment, he was brought before the Kangaroo court and fined by the judge thereof, which fine he refused to pay, whereupon he was beaten with a razor strop; it appearing that the sheriff, while having knowledge of the existence of the Kangaroo court and its rules, had no knowledge or good reason to believe that the prisoners contemplated an assault upon the plaintiff; and it was shown that Kangaroo courts were maintained in all jails and were considered an aid to the sheriff in keeping the prisoners clean and orderly; a sheriff being bound only to the exercise of reasonable and ordinary care in protecting a prisoner, in the absence of circumstances showing that he had reason to anticipate danger.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered October 20, 1913, dismissing an action in tort, upon granting a nonsuit. Affirmed.

*A. L. Slemmons*, for appellants.

*E. K. Brown* and *E. E. Wager*, for respondents.

CHADWICK, J.—Plaintiff was committed to the county jail at Ellensburg, at about a quarter to twelve o'clock. He paid his fine and was released about four o'clock. The record shows that it is customary to maintain in the jails of the country, a "Kangaroo Court," the object of which is

[1]Reported in 142 Pac. 479.

to promote health and cleanliness. The rules of the Kangaroo court in the jail at Ellensburg are as follows:

"Rules of the Kangaroo Court of Kittitas County Jail.

"(1) The court must have a sheriff, judge and prosecuting attorney. (2) Every person entering this jail is guilty of a misdemeanor and upon conviction is subject to a fine, of not more than two dollars, ($2.00). (3) Every cell must be swept and mopped at least once a day. (4) All dishes must be washed after each meal. (5) Each and every one excepting the 'Mucker' must stay in cells during dishing up of meals. (6) The judge can call court whenever he sees fit. (7) The use of the toilet is prohibited during meals. (8) The throwing of scraps on the floor is strictly against the rules. (9) No profane language is allowed during meals. (10) Each person must take a bath at least once a week. (11) No loud talking after nine o'clock. (12) Each and every one must keep their cells clean and free from vermin. (13) Re. Rule No. 2. All fines to be paid into treasure of Kangaroo Court. (14) The jailor will be treasurer of said court. (15) The monies paid into said treasure can be checked against by judge for tobacco etc., to be distributed among all prisoners. The above rules to be strictly enforced by the judge. . . . (16) Each and every inmate must take a bath immediately after entering said jail. (17) No spitting in sink at any time."

After plaintiff had been committed, and at the noon hour, he was called before the judge of the "Kangaroo Court" and was fined $2, and was requested to sign an order on the jailer for that amount of money. This he refused to do, whereupon he was taken hold of by the sheriff of the "Kangaroo Court" and by others and thrown upon the floor and was beaten over the back and loins with a razor strop. There is testimony sufficient to warrant the holding that he was injured and is still suffering from the hurts and bruises then inflicted. After the payment of his fine and discharge, he brought this action against the defendant sheriff and his bondsmen. In addition to the facts stated, it developed upon the trial that there had been no other instance of any beating or enforced

discipline within the range of the testimony taken at the trial.

There are but two instances that can in any way be relied on as ground for the maintenance of this action against the sheriff. The one is that the jailer was told, within about an hour after the session of the Kangaroo court, that plaintiff was hurt and demanded to be taken out, which demand was repeated again before his final discharge; and the further circumstance that one of the witnesses so testified as to warrant a holding that the sheriff admitted to him that he was aware of the fact that the Kangaroo court was in the habit of inflicting corporal punishment.

The first circumstance, standing alone, has no evidential weight. It would not follow, as a matter of law, that notice of such violence, if it had been inflicted, would bind the sheriff or charge the sheriff with notice that plaintiff or prisoners previously incarcerated might be subject to the assaults of fellow prisoners. So far as the record goes, the only notice of the conduct of the members of the Kangaroo court that had come to the sheriff would be such notice as is imported or implied by reading the rules of the court. The material part of the testimony of the witness who testified to a knowledge on the part of the sheriff is as follows:

"Mr. German explained the case to me saying, . . . that it [the court] was an institution that was in every jail in the country, particularly in the larger cities; that it was something that they considered a necessity because it was a way they had for keeping the prisoners clean and orderly, as they had rules which made the prisoners much better for having them. And he specified several things that the court did, and for instance, if a man didn't make his bed he got a certain number of straps and if he didn't wash himself he would get a certain number of straps. . . . Q. You say he spoke of the rules of this Kangaroo court, and enumerated what they were? A. Yes, some of them. Q. And that for an infraction of these rules the court would administer punishment? A. Yes, a certain number of straps for certain offenses."

And on cross-examination:

"When he told you about Kangaroo court he was talking about the Kangaroo court system all over the country? A. Yes, sir. Q. And he didn't attempt to give you the rulings of his court at all? A. Well, I think so,—I asked him about that. Q. You have no particular occasion for remembering? A. No, not at all. Q. You would not undertake to say now that he said it was the custom of the Kangaroo court in his jail to flog prisoners, or administer straps to them? A. Well— Q. You would not be certain about that? A. I took it for that—he said that these courts existed in all jails and he spoke of the rules—I would not say that he said the rule was so in his jail—but I took it for that. Q. You would not say that Mr. German told you that he had ever authorized or had ever known of any flogging or strapping of prisoners in his jail? A. Well, no, if you put it that way; he said that was what was being done and that was what was done. Q. He was speaking of Kangaroo courts in general? A. Well, yes, in general, but I asked him what had been done to Riggs. Q. And he expressed sorrow that anything had ever been done to Riggs? A. He did. Q. And he didn't say that he or his deputies had ever authorized anything to be done to Riggs? A. No, no, not in so many words."

To give this testimony the effect which plaintiff insists that it should be given, would be to charge the defendant with a willful purpose to violate his official oath. The defendant is protected by a presumption that he has in all things performed his official duties, not the least of which is the exercise of reasonable and ordinary care to protect a prisoner while in his custody. *McPhee v. United States Fidelity & Guaranty Co.,* 52 Wash. 154, 100 Pac. 174, 132 Am. St. 958, 21 L. R. A. (N. S.) 535; 25 Am. & Eng. Ency. Law (2d ed.), 671. Or, as has been held, a sheriff cannot be charged with neglect in failing to prevent what he could not reasonably anticipate. *Gunther v. Johnson,* 36 App. Div. 437, 55 N. Y. Supp. 869. We think the testimony is wholly insufficient to show that the defendant had knowledge or good reason to believe that the prisoners contemplated an assault upon the plaintiff and that, having such knowledge, he took

no steps to prevent it. He would not therefore be liable under the rule announced in the case of *Nixon v. Cupp*, 5 Okl. 545, 49 Pac. 927, a Kangaroo court case, where the sheriff was held liable, there being testimony adduced to the jury to show that the sheriff knew that it was,

". . . the custom of the prisoners confined in the jail under his charge to assault and beat prisoners brought to such jail, after pretended or mock trials, and that he failed to use such means as were at his command to prevent such acts."

A sheriff should not be required, in the exercise of ordinary care, to maintain himself or a deputy in the presence and company of his prisoners unless the circumstances as developed by the testimony are such that it can be said that the sheriff had reasonable ground to apprehend the danger. We take it from the record that "Kangaroo courts" have come to be established institutions, and are encouraged by sheriffs and jailers. Their rules, if the rules we have quoted are consistent with the rules of Kangaroo courts generally, indicate that their work is in aid of the work of a sheriff, whose duty it is to maintain a fit and suitable place to confine his prisoners and to protect the ones inclined to cleanliness and decency from those who are not. The record in this case is short and we have read the whole of it, and we feel satisfied that no jury would return a verdict against the defendant.

The judgment of the lower court is affirmed.

CROW, C. J., MAIN, ELLIS, and GOSE, JJ., concur.