TUCKER, Judge.
This suit is for damages for one Mark Louis Stevens for permanent damage in the form of his mental illness which, it is alleged, became more acute, severe, and chronic as a result of his treatment at East Louisiana State Hospital. The lower court dismissed the suit, and plaintiff has appealed.
The record indicates that the plaintiff was born on July 17, 1947 of parents who both had psychiatric difficulties.
Prior to his having been admitted to East Louisiana State Hospital, pursuant to a commitment by the Thirtieth Judicial District Court for the Parish of Beauregard, the record indicates that he had been placed in the Louisiana Training Institute in Monroe, Louisiana, the Louisiana Correctional and Industrial School in De-Quincy and Southeast Louisiana State Hospital in Mandeville.
The record in this case fills seven volumes and hundreds of pages.
There is no question of serious mental illness on the part of the plaintiff during this period of time although there is conflicting testimony as to whether he was suffering from schizophrenia or anti-social reaction.
The jurisprudence concerning liabilities such as this is adequately summarized in St. Julian v. State, 98 So.2d 284 (La.App., 1st Cir. 1957) as follows:
“ 'The general rule gathered from the cases is that in order to hold the State or the employees of a state who have charge of a prison liable for injury to one inmate inflicted by another inmate, there must be knowledge on the part of such officers in charge that such injuries will be inflicted, or good reason to anticipate such, and following that, there must be a showing of negligence on the part of these officials in failing to prevent the injury. Stephens v. Conley, 48 Mont. 352, 138 P. 189; Kusah v. McCorkle (100 Wash. 318), 170 P. 1023 (L.R.A.1918C, 1158); Ratliff v. Stanley, 224 Ky. 819, 7 S.W.2d 230 (61 A.L.R. 566); Riggs v. German, 81 Wash. 128, 142 P. 479; Gunther v. Johnson (36 App.Div. 437), 55 N.Y.S. 869.’
“See Honeycutt v. Bass, La.App. 2 Cir., 187 So. 848; 41 Am.Jur. ‘Prisons and Prisoners,’ Section 13 at p. 894; 72 C.J. S. Prisons § 13, at p. 866.”
There are pages and pages of criticism of the adequacy of the institutions for the care of the mentally disturbed in the State of Louisiana. Much, if not all, of this may be true as a matter of fact. It is almost common knowledge that our institutions of this nature are not what they ought to be.
In addition, there are pages and pages of evidence admitted into the record concerning specific complaints in the care and treatment of Mark Stevens. These are best summarized by lists of allegations of *623 negligence in plaintiff’s brief which we quote here:
“Allegations of negligence attributed to the Department of Institutions (Corrections) were the following:
(1) Failing to provide petitioner with psychiatric care as was indicated in petitioner’s case through the Mental Health Center at Monroe, Louisiana;
(2) Failing to employ persons at the Louisiana Training Institute at Monroe, Louisiana, who were sufficiently trained and permitting and sanctioning the use of excessive force and brutality on inmates such as petitioner by such agents and/or employees at the Louisiana Training Institute;
(3) Failing to provide psychiatric care for petitioner at the Louisiana Correctional and Industrial School at De-Quincy, Louisiana, when the agents and/or employees of the Department of Institutions assigned to that institute knew, or should have known that such care was mandatory in petitioner’s case;
(4) Permitting and sanctioning petitioner’s confinement in a solitary confinement cell, depriving him of proper food, and subjecting him to conditions causing him great mental and physical pain.
“Allegations of negligence ascribed to the Department of Hospitals were the following:
(1) Failing to employ sufficient psychiatrists and professional staff, thereby depriving petitioner of all psychiatric treatment at the Criminal Unit;
(2) Failing to employ trained attendants in sufficient numbers in order to prevent fellow patients from attacking petitioner;
(3) Housing petitioner, who was a juvenile, in quarters at the Criminal Unit with adults;
(4) Availing itself of a system in which a fellow patient is designated ‘ward boss’ who inflicted physical pain upon petitioner instead of providing skilled attendants to look after patients and keep order;
(5) In confining petitioner to the Criminal Unit under conditions which were overcrowded, ill-heated, unsanitary and untherapeutic, and depriving him of proper clothing, food and medical attention, thereby causing him great mental and physical suffering.”
The defendants strongly contest the truth of these allegations and further contest whether, if true, they had anything to do with an aggravation of a mental condition of the plaintiff.
The purpose of the court is not to evaluate the failure or alleged failures of the Legislative and executive branches of our state government to meet the needs of the people.
The court, in this instance, is confined to make a finding as to whether this inadequacy, if it existed, constituted negligence which aggravated the mental condition of the plaintiff, or to making a finding of particular acts of. negligence which aggravated the mental condition of the plaintiff.
The record does not bear this out. One of the plaintiff’s witnesses, Dr. Clarence Trice, who was a director of the Forensic Psychiatric Division of East Louisiana State Hospital of Jackson, Louisiana during the time in question, testified in his deposition as follows:
“Q. After Mark Stevens was placed in the Forensic Unit, did his condition improve or deteriorate ?
A. It had improved. It improved from an acute psychotic state. He got better.” (page 96 of dep.)
Dr. Trice was the attending physician at the time and was the plaintiff’s witness and plaintiff is bound by his testimony.
*624 The record indicates that in evaluating the testimony that the lower court found that much of the testimony concerning conditions at the hospital, in general, to be irrelevant.
However, his extended reasons for judgment indicate that he closely followed the trial and paid particular attention to the testimony of those physicians and experts who personally were involved in the treatment of the plaintiff and in his care.
In addition, he had closely read the testimony of Dr. Trice by deposition and quoted from him in his reasons for judgment extensively. It is obvious that he relied primarily upon the testimony of Dr. Trice in arriving at his conclusions.
The Court found:
“And, of course, according to Dr. Trice’s testimony, he said, ‘While there he received,’ according to Dr. Trice, ‘as follows. He did receive chemotherapy in the form of the phenothiazines and medication as needed, and so far as I know he received some electroconvulsive treatment, and he did get some follow-up from a psychological student, as mentioned.’ So he was not deprived of all psychiatric treatment; he did receive some psychiatric treatment. And each of the psychiatrists testified that medication was the most important treatment for Mark’s illness. The one today so testified. Dr. Trice also testified that, ‘He went out of his way to get himself in difficulty with the other patients, probably for dynamic reasons, of course.’ And, ‘of course, Mark was psychotic and it was very difficult for him to relate information to tell you what was going on.’ And, ‘the prognosis is poor.’ And when asked, ‘Is there a known cure for schizophrenia,’ he said, ‘None that I know of’; and every doctor testified to the same thing. And the uncle, and also is shown in record — presumably the doctors got this from the mother — even as a child Mark liked to be to himself and was stubborn and hard to handle. Then Dr. Trice again, ‘Psychiatric illnesses, especially psychiatric illnesses of this nature are greatly influenced by the home situation or the patient’s early environment even before maybe two years of age occasionally, and this is where some of the groundwork of the personality is formed, by the situation at a very early age. There is no doubt that early development of this patient did have an influence on him.’ Question: ‘Previously you stated that Mark Stevens did have this psychosis even before he went to LTI or to Southeast, is that correct?’ Answer by Dr. Trice: ‘Yes. I don’t think this psychosis was caused by his confinement to Southeast Hospital. They helped him considerably there. No, I don’t think the psychosis was caused by institutionalization.’ And when it comes to concerning milieu therapy, he stated, “It causes them to regress further in some instances and might cause some type patients to get worse.’ That doesn’t say anything at all about this patient. Then this is the strongest that I saw, ‘Had he been placed in the proper milieu and had received intensive therapy treatment, in my opinion, he would have shown more improvement and his illness might not have been as chronic and as severe as it is today.’ Might not. And he stated, T would consider the treatment that he had at Southeast Hospital somewhat an intensive type treatment. It is not the most intensive a person can get, but it was rather diligently done, ascertaining from the records.’ But yet he certainly — it certainly didn’t seem to help him too much because he was just out a few days and stealing automobiles and leaving home and such things as that. And then a question was asked Dr. Trice. ‘After Mark Stevens was placed in the Forensic Unit did his condition improve or deteriorate?’ Answer ‘It had improved. It improved from an acute psychotic state.’ He got better. Yes, I sent off and got records myself from Highland Hospital.’ That’s another quote. They diagnosed *625 the patient as anti-social reaction, ‘That this hoy was cooperative in all aspects of the treatment program here but showed an inability to function in intensive psychotherapy. It is my feeling that when he gets through with the turbulent and stormy feelings related to his adjustment and reaction of adolescence, it can then be determined where there is an area in which intensive psychotherapy can be used by this boy.’ ”
The causal connection must be shown between plaintiff’s condition and the treatment accorded to him by the institutions.
Plaintiff-appellant has failed in carrying that burden.
For the above and foregoing reasons the judgment below is affirmed and the plaintiff-appellant is condemned to pay the costs incurred by him, and those costs recoverable by the defendant-appellee.
Affirmed.