322 So.2d 890 (1975)
Joseph RANEY, Plaintiff-Appellant,
v.
The STATE of Louisiana, Through the DEPARTMENT OF CORRECTIONS, Defendant-Appellee.
No. 10497.
Court of Appeal of Louisiana, First Circuit.
November 24, 1975.
Byron Magvee, Baton Rouge, for plaintiff-appellant.
Robert E. Funderburk, Jr., Baton Rouge, for defendant-appellee.
Before SARTAIN, BAILES and PICKETT, JJ.
PICKETT, Judge:
This is a suit in which the Plaintiff, Joseph Raney, a former inmate of the Louisiana State Penitentiary, at Angola, seeks to recover for personal injuries inflicted upon him on November 15, 1974, by two other inmates, at a time when they were confined together in a cell in Cell Block D, Isolation.
Plaintiff contends that two other inmates, namely, Billy Self and Frederick Smith, sexually assaulted him; that Smith beat him about the head and body with piece of brick, while Self grabbed his legs and pulled him down. Plaintiff sustained a broken nose, cuts about his face, and other lacerations and bruises.
The Defendant is the State of Louisiana, through the Department of Corrections.
Plaintiff contends that Defendant was negligent in
(1) either not inspecting plaintiff's cell to see if any potential weapons were present; or,
(2) failure to search and inspect thoroughly all prisoners going into plaintiff's cell; or,
(3) putting too many persons in one cell with plaintiff; or,
(4) placing him in a cell with inmates known to have a potential for these type of attacks; or,
(5) any or all of these.
Defendant denies liability, and alternatively, pleads the contributory negligence of Plaintiff, and the assumption of the risk by plaintiff in inviting and provoking the attack, if any occurred, and in failing to express his fear of receiving bodily harm *891 to any officials of the Louisiana Department of Corrections.
The Trial Court rendered judgment for Defendant, and Plaintiff appeals.
The evidence establishes that at about noon, on November 15, 1974, Plaintiff was placed in a cell in Cell Block D, Isolation, as a punishment for violating a prison regulation. He was placed in the same cell with three other persons, namely, Billy Self, Frederick Smith, and a third party, whose name was never revealed.
Plaintiff testified that shortly after he was placed in the cell Smith and Self questioned him as to whether he would submit to homosexual acts, and he refused. Argument ensued, and was finally interrupted by the noon meal. After this noon meal was over, according to Plaintiff, Smith again talked of homosexual acts and threatened Plaintiff, "You are going to do it one way or the other."
Plaintiff further testified that at about 3:00-3:30 P.M. he called a guard to the door of the cell and requested to be moved to another cell because the "dudes" in the cell with him were trying to sexually assault him. He said the guard told him he would see what he could do, but that he never saw this guard again, and he was not moved out of the cell.
Smith, in his testimony, denied that he was a homosexual, and denied that Plaintiff ever talked to a guard, on the afternoon in question.
Apparently nothing more happened involving Plaintiff until about 10:00 P.M., after the mattresses were passed out. Plaintiff said he was sitting on the commode when suddenly Smith, without provocation, attacked him, and began beating his face with a piece of concrete brick, striking him several times. Simultaneously, Self grabbed his legs and pulled him down. Plaintiff testified that he got to the door, somehow, and rattled it, and a guard promptly appeared, and broke up the assault, and took him to receive medical attention. Smith disputed this version, stating that Plaintiff made a homosexual advance to him, "touched" him, whereupon Smith pushed Plaintiff, and Plaintiff struck at Smith. The fight started, and he, Smith, with a small piece of brick in his hand, to make his fist harder, struck Plaintiff several times. Plaintiff also struck Smith several times. The fight was of short duration. Within seconds a guard broke it up.
Plaintiff testified that after the fight the brick was "full of blood". Smith denied this, and Mr. James Meredith, the Correctional Officer who broke up the fight also said the piece of brick, which was about two inches in diameter, had no blood on it.
Plaintiff had a reputation at Angola of being a trouble maker. In the one year and approximately nine months that he had been there he had been in several fights. He had been in Isolation several times before this occasion. Smith did not have a reputation as a trouble maker, although he did have the reputation of not being a good worker.
The evidence establishes that a head count is made in Cell Block D every hour, irregularly, as a routine. Also, the cells are checked and the prisoners are frisked for weapons every other day. These searches were conducted unannounced.
Guards are near at hand at all times, although it is acknowledged that security could be tighter if more guards were employed. If an inmate wanted to talk to a guard he could get the guard's attention by shaking or rattling the bars, and a guard would go see what he wanted.
The paramount issue here involved is the question of the responsibility of the State to protect one inmate from intentional harm caused him by another inmate.
*892 With reference to this question we quote from the opinion of the very able Trial Judge, as follows:
"The landmark case dealing with the standard of responsibility due by the State of Louisiana and its employees in the maintenance of a penal institution and the care of those detained therein was initially stated in St. Julian v. State, 98 So.2d 284 (La.App. 1st Cir. 1957), wherein it stated:
` * * * (I)n order to hold the State or the employees of a state who have charge of a prison liable for injury to one inmate inflicted by another inmate, there must be knowledge on the part of such officers in charge that such injuries will be inflicted, or good reason to anticipate such, and following that, there must be a showing of negligence on the part of those officials in failing to prevent the injury.'
`This holding has been adhered to in other recent cases wherein the factual circumstances were similar. Bastida v. State, Department of Corrections, 269 So.2d 544 (La.App. 1st Cir. 1972); Nedd v. State, Department of Institutions, 281 So.2d 131 (La.1973). Particularly, in Parker, the Court declared:
`A penal institution is not an insurer of an inmate against attacks by other inmates. The standard is that of reasonable or ordinary care. The majority rule is that in order to hold the penal authorities liable for an injury inflicted upon an inmate by another inmate, the authorities must know or have reason to anticipate that harm will ensue and fail to use reasonable care in preventing the harm.'"
This same standard of care was reaffirmed by us in the recent case of Craft v. State, 308 So.2d 290 (La.App. 1st Cir. 1975), wherein we stated that:
"Under the facts in Parker [Parker v. State, 282 So.2d 483], the Supreme Court held that the issue was not one of absolute liability under the statutes but was whether or not the prison officials had adhered to a standard of care that is reasonable."
In the instant case there is no evidence that the Corrections Officers were negligent in the search of the inmates or the inspection of the cells for weapons. On the contrary the evidence establishes that routine, unannounced inspection of both prisoners and cells were made regularly. Every reasonable means of locating and confiscating weapons was employed. The difficulty in locating and confiscating every piece of brick, and cinder block is readily understandable, especially in view of the continued activity of prisoners in breaking or working pieces of masonry loose from walls and other places.
Plaintiff has likewise failed to establish any negligence on the part of the State in failing to separate Plaintiff from the other inmates in the cell. The Trial Court gave no credence to Plaintiff's testimony that he had made a complaint concerning his fellow inmates. We concur. Plaintiff's failure to complain for many hours after his professed original complaint, refutes the contention that any complaint was ever made. The proximity and ready availability of guards is evidenced by the promptness with which a guard arrived on the scene to break up the altercation that ultimately did occur.
We find no negligence on the part of the prison officials in the inspection of the cells, and the search of the inmates for weapons. On the contrary, we find that the prison authorities exercised every reasonable effort to locate and confiscate any object that might be used by an inmate as a weapon.
Additionally, we find no negligence on the part of the prison authorities in failing to separate Plaintiff from the inmates who later harmed him. The record fails to establish that the prison authorities ever had *893 adequate reason to anticipate that harm would come to Plaintiff.
Accordingly, for reasons assigned, the judgment of the District Court is affirmed, at Appellant's costs.
Affirmed.