[No. 7722.    Decided March 9, 1909.]

D. D. McPHEE et al., *Appellants*, v. UNITED STATES FIDELITY AND GUARANTY COMPANY et al., *Respondents.*[1]

SHERIFFS—NEGLECT OF DUTY—ESCAPE OF PRISONERS—OFFICIAL BONDS—LIABILITY TO PERSONS ENTITLED TO REWARD. A sheriff is not liable on his official bond to parties entitled to a reward for the capture of criminals, turned over to him, for damages suffered by the escape of the prisoners, under the conditions of his official bond to "well, truly, and faithfully perform all of his duties as sheriff," and of the statute giving a right of action on the bond in favor of all persons injured or aggrieved by his wrongful act or default; since the duty to keep the prisoners is not direct, or to the plaintiffs, but to the public, and damages recoverable on the

[1] Reported in 100 Pac. 174.

bond must be measured by the wrongful act itself and not by loss of profits anticipated under an independent contract between third parties.

Appeal from an order of the superior court for Spokane county, Sullivan, J., entered June 9, 1908, upon sustaining a demurrer to the complaint, dismissing an action for damages. Affirmed.

*Macdonald & Reiter* and *H. M. Brooks*, for appellants.

*Happy & Hindman* and *Gunn & Rasch*, for respondents.

CHADWICK, J.—This action was begun by plaintiffs to recover damages. It was alleged in the complaint, that plaintiffs had effected the capture of one Ed. McDonald and one George Frankhauser, who had on the 12th day of September, 1907, unlawfully and feloniously stopped and robbed a mail and passenger train operated by the Great Northern Railway Company, from which valuable packages containing approximately the sum of $40,000 in lawful money of the United States had been taken; that rewards for the arrest and conviction of each of the guilty persons were offered, by the United States of America in the sum of $1,000, the Great Northern Railway Company in the sum of $5,000, and the Marine Insurance Company of London, a corporation, in the sum of $1,000; said rewards aggregating the sum of $14,000.

It is further alleged, that plaintiffs captured and turned over to the United States marshal for Montana, and he, under an order issued by the United States district court for the district of Montana, in turn delivered, each of the guilty parties to defendant Shoemaker as sheriff of Lewis and Clark county, in the state of Montana, for their safe keeping in the county jail of said county; that plaintiffs were possessed of "information, facts, and material and competent evidence" sufficient to secure the conviction of the said McDonald and Frankhauser, and each of them; that the defendant Shoemaker did not "well, truly, or faithfully per-

form his duties" as sheriff by safely keeping the said prisoners, but carelessly, negligently, and unfaithfully suffered and permitted them to escape from the jail in which he had confined them, and that they have been ever since, and now are, fugitives from justice; that plaintiffs have been damaged in the sum of $14,000 by reason of his negligence. The United States Fidelity & Guaranty Company, a corporation, surety upon the sheriff's official bond, was joined as defendant.

The condition of the sheriff's bond was that he would "well, truly, and faithfully perform all of his duties as such sheriff." Section 1064 of the Political Code of Montana pertains to official bonds and provides that such bonds shall be, "in force and obligatory upon the principal and sureties therein to and for the state of Montana and to and for the use and benefit of all persons who may be injured or aggrieved by the wrongful act or default of such officer in his official capacity." It also provides that "any person so injured or aggrieved may bring suit on such bond in his own name without any assignment thereof." A general demurrer was interposed to the complaint and sustained by the court below. From an order dismissing plaintiffs' action, they have appealed.

The prisoners were properly turned over to respondent Shoemaker, as sheriff of Lewis and Clark county, Montana, and that it was his official duty to safely keep them must be conceded. The only question before us is whether he is responsible to appellants under his official bond, the conditions of which, together with the statute amplifying them, have been hereinbefore quoted. It is a fundamental principle that the obligation of an official bond will not be extended by construction beyond its expressed terms, but will be considered by the court according to its true intent and meaning. 25 Am. & Eng. Ency. Law (2d ed.), 723. A sheriff owes a two-fold duty; one to the public, and one to private individuals who are concerned in the execution of civil and quasi civil process. He is liable upon his official bond for a breach

of such duty. But the duty in either event must be direct; the cause of action must result to the party injured; it must operate as a deprivation of an existing right. Whatever contracts may be assumed by or between third persons can be made as between themselves to depend directly or incidentally upon the act of a public officer, but we know of no rule that would make the officer liable to pay a damage to such third person, although the loss was occasioned by his wrongful act or default. In the case at bar third parties had promised to pay rewards in the event of the arrest and conviction of certain train robbers. Acting upon this offer, appellants undertook to, and did, arrest the guilty parties. They were turned over to respondent Shoemaker for safe-keeping, and escaped. Shoemaker was not a party to the contract and owed no duty to either party to it, either to receive the prisoners or to keep them safely. The chance of an escape might be denominated a hazard of the contract. His whole duty was to the public and to the prisoners. The general rule is that a sheriff is never liable at the suit of third persons, unless expressly bound by the duty of his office. *Strong v. Campbell,* 11 Barb. 135; *Harrington v. Ward,* 9 Mass. 251; *South v. Maryland,* 18 How. 396, 15 L. Ed. 433; *Hullinger v. Worrell,* 83 Ill. 220; *State, Use of Cocking v. Wade,* 87 Md. 529, 40 Atl. 104.

To this rule one exception has sometimes been declared; that is, that he owes a duty to his prisoner to keep him in health and free from harm; and for any breach of such duty resulting in death or injury he is liable to the prisoner, or if he be dead, to those entitled to recover for his wrongful death. But his survivors could not maintain the action unless the deceased, if alive, could have maintained an action on the case. *State ex rel. Tyler v. Gobin,* 94 Fed. 48; *Asher v. Cabell,* 50 Fed. 818.

We have searched the books in vain for authorities upon the concrete question whether a party who was entitled to a reward could recover against a sheriff on his bond for

damages suffered by the escape of the prisoner, and must therefore look at the general principles of the law for guidance.

The liability of a sheriff who suffers or permits one to escape who has been arrested on mesne or final process, to be held pending the satisfaction of a debt or judgment, is not to be confused with the case before us. A sheriff has been held liable in instances so arising, upon the theory that the body of the debtor stands in lieu of the debt, whether the incarceration be for a fixed term or continued pending satisfaction or payment.

Appellants' principal reliance is upon the following cases: *Asher v. Cabell, supra; Appeal of Jenkins,* 25 Ind. App. 532, 58 N. E. 560; *Tennessee v. Hill,* 60 Fed. 1005, 24 L. R. A. 170; *McPeek v. Western Union Tel. Co.,* 107 Iowa 356, 78 N. W. 63, 70 Am. St. 205, 43 L. R. A. 214. In the case of *Asher v. Cabell* a surviving widow was permitted to sustain an action against the United States marshal for the wrongful death of her husband, who had been taken from his custody by a mob, and by it slain. The case was sustained upon the theory that it was the duty of the marshal to safely keep and protect his prisoner. The liability grew out of the personal obligation which was within the intent and meaning of his bond. The negligent performance of his duty to deceased created a right of action. In the case at bar, respondent Shoemaker owed no official duty to appellants. The case of *Jenkins* was in its facts on all fours with the case of *Asher v. Cabell,* which the court cited and relied upon as authority. The case of *Tennessee v. Hill* was a suit by the public, the state of Tennessee, and is not on that account an authority here; for it cannot be denied that the public could recover the expenses incurred upon recapture of a prisoner negligently permitted to escape by the officer having his custody. In *McPeek v. Western Union Tel. Co.,* the company failed to deliver a message which, if delivered in time, would have resulted in the arrest of a criminal and the re-

covery of a reward by the plaintiff. The court held the company to account. While the soundness of the decision may well be questioned on account of the remoteness of the damages sustained, yet admitting its value, it can be readily distinguished from the case at bar. When the company undertook to transmit the message, it impliedly promised to act promptly, and became liable to the sender for a breach of such duty. The obligation was direct. But the case is not controlling here for the reason that there was no duty, either express or implied, on the part of Shoemaker to keep the prisoners for appellants. His duty was to keep them for the public, and produce them for trial.

Other cases cited by appellants are in themselves correct expressions of the law when applied to the facts involved, but they are not in point. The underlying principle in all the cases is that all recoveries against a public officer on his bond for the involuntary escape of a prisoner are limited to actual damages, damages arising out of and to be measured by the wrongful act itself; and while there may be no authority for it, we may add—for principle sanctions it—that damages can in no case be measured by losses incurred or profits anticipated under an independent contract between third parties, although the performance of the contract depends upon the conduct of the officer. That part of the statute of Montana, "for the use and benefit of persons who may be injured or aggrieved," cited and relied upon by appellants, must be read in connection with the conditions of the bond, and when so considered it must be held to refer only to such liabilities as arise within the fair intendment and meaning of the obligation itself.

The judgment of the lower court is affirmed.

RUDKIN, C. J., FULLERTON, GOSE, CROW, MOUNT, and DUNBAR, JJ., concur.